IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WILLIAMS,<br><br>                Petitioner,<br><br>vs.<br><br>RICK M. HILL, Warden, Folsom State Prison,<br><br>                Respondent. | No. 2:11-cv-01326-JKS<br><br>MEMORANDUM DECISION |

Christopher Williams, a state prisoner appearing *pro se,* filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Williams is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Folsom State Prison. Respondent has answered, and Williams has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Williams was tried jointly with two co-defendants in the San Joaquin County Superior Court. Following a jury trial Williams was convicted of first-degree murder (Cal. Penal Code § 187), false imprisonment by violence (Cal. Penal Code § 236), dissuading a witness by force or threat (Cal. Penal Code § 136.1(c)(1)), assault by a means intended to cause great bodily harm (Cal. Penal Code § 245(a)(1)), and possession of a firearm by a felon (Cal. Penal Code § 12021(a)). The jury also found true enhancements for using a handgun in a murder (Cal. Penal Code §§ 12022.53(b), 12022.5(a)) and a knife and taser in commission of the assault (Cal. Penal Code § 12022(b)(1)). The trial court sentenced Williams to an aggregate indeterminate prison

term of thirty-one years to life.  The California Court of Appeal, Third Appellate District, affirmed Williams' conviction, but modified his sentence by reducing it by two years,[1] and the California Supreme Court denied review on June 23, 2010.  On August 6, 2009, while his appeal was pending, Williams filed a habeas petition in the San Joaquin County Superior Court, which was denied on February 11, 2011, in a reasoned decision.[2]  Williams timely filed his Petition for relief in this Court on June 13, 2011.

The facts underlying Williams' conviction are well known to the parties and are set forth in detail in the opinion of the California Court of Appeal.  Consequently, they will not be repeated here except to the extent necessary to understand the decision of this Court.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Williams raises three grounds:  (1) the prosecution improperly argued that Williams was equally guilty under an aiding and abetting theory; (2) there was insufficient evidence to support the *mens rea* element required for premeditated murder; and (3) the trial court coerced the jury.  Williams adds a fourth ground purporting to join in the grounds asserted on appeal by his two co-defendants.  Nowhere in the Petition do these grounds or the facts supporting them appear.  Williams attempts to rectify this situation in his Traverse.  This Court does not ordinarily consider grounds raised for the first time in the traverse.  "The petition must: (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each

---

[1] *People v. Miller*, No. C056951, 2010 WL 827904 (Cal. Ct. App. Mar. 10, 2010).

[2] It does not appear that Williams sought further review of the issues raised in that petition.  The issue raised in that petition is not raised before this Court.

ground; [and] (3) state the relief requested . . . ."[3]  To the extent that Williams wishes to raise additional grounds, the proper procedure would be to file a motion to amend the petition under Federal Rule of Civil Procedure 15.  In this case, however, such a motion would be futile because the amendment would not relate back to the initial filing and would, therefore, be barred by the one-year limitation period of 28 U.S.C. § 2244(d)(1).[4]  Consequently, this Court declines to address Williams' fourth ground.  Respondent does not assert any affirmative defenses.[5]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[3] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2012).

[4] *See Mayle v. Felix*, 545 U.S. 644, 655-64 (2005) (discussing at length the interplay between Habeas Rule 2(c) and Fed. R. Civ. P. 15).

[5] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2012).

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[8] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[10] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[11] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13] Because state court judgments of

---

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

> The Supreme Court recently underscored the magnitude of the deference required: As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[15]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[16] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[17] This Court gives

---

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[16] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[17] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state

(continued...)

the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[18]

## IV.  DISCUSSION

<u>Ground 1:  Prosecutorial Misconduct</u>

Williams argues that the prosecutor improperly instructed the jury that he was equally guilty with the person who actually killed the victim under an aiding and abetting theory. The California Court of Appeal rejected Williams' argument that the jury was improperly instructed:[19]

> Williams contends CALCRIM No. 400, with which the jury was instructed, "improperly equated [his] own mental state with the mental state of the direct perpetrator, . . . Jefferson," and as a result, "required the jury to convict an aider and abettor of first degree murder if the perpetrator committed a premeditated murder, regardless of individual mental state." He is mistaken.
> The court instructed the jury with the following modified version of CALCRIM No. 400 (Aiding and Abetting: Intended Crimes):  "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. Two, he or she may have aided or abetted someone else who committed the crime. In these instructions, I'll call the other person the perpetrator. The person is *equally guilty* of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it. [¶] Under some specific circumstances, if the evidence establish[es] aiding and abetting of one crime, here assault with a deadly weapon, the person may also be found guilty of other crimes that occurred during the commission of the first crime if the other crime[s] were the natural and probable consequences of the initial crime. A natural and probable consequence is one that

---

[17](...continued)
court explaining the state court's reasoning.").

[18] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[19] Although in his Petition Williams refers to the prosecutor's arguments and the issue was presented to the California Court of Appeal as an erroneous jury instruction, because the analysis is the same, this Court assumes that Williams simply inadvertently misspoke in drafting his Petition.

6

a reasonable person would know is likely to happen if nothing unusual intervenes." (Italics added.)

Thereafter, the jury was instructed in the language of CALCRIM No. 401 in pertinent part as follows: "To prove a defendant is guilty of a crime based on aiding and abetting, the People must prove: [¶] One, the perpetrator committed the crime; two, [d]efendant knew the perpetrator intended to commit the crime; three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and four, the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows the perpetrator's unlawful purpose and he or she specifically intends to and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime."

Considering the jury instructions as a whole, the jury certainly understood that to find Williams guilty of murder as an aider or abettor it must find either that (1) Williams knew Jefferson intended to kill Celestine and intended to aid and abet in the commission of the murder, or (2) Williams knew Jefferson intended to assault Celestine with a deadly weapon, intended to aid and abet in the commission of that offense, and that a reasonable person in Williams' position would have known that a premeditated and deliberate murder was a natural and probable consequence of the commission of the intended offense.

Moreover, Miller's conviction for second degree murder demonstrates that the jury understood that it was not "required . . . to convict an aider and abettor of first degree murder if the perpetrator committed a premeditated murder, regardless of individual mental state," as Williams contends. Indeed, as previously discussed, the jury asked, "If we find [one] defendant guilty of 1st degree murder & [one] of 2nd degree murder must we find an aider & abettor guilty of 1st or 2nd degree murder? Or can we consider manslaughter?" The court responded that the jury need not find the aider and abettor guilty of first or second degree murder, and that it could consider manslaughter.[20]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[21] Consequently, although the sufficiency of the review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[22] The Court accepts, as it must,

---

[20] *Miller*, 2010 WL 827904 at *10.

[21] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[22] *See Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).

the California court's identification of the elements of the offense.[23]  In this case, the California Court of Appeal found that the jury was correctly instructed under state law.  This Court is bound by that determination.[24]  Because the prosecutor correctly stated state law, no prosecutorial misconduct occurred.  Williams is not entitled to relief under his first ground.

Ground 2:  Insufficient Evidence of *Mens Rea*

Williams presents two arguments under this ground.  First, Williams argues that because there was no evidence that he premeditated, deliberated, or intended to kill the victim, his conviction for first-degree murder was not supported by sufficient evidence.  Second, Williams argues that there is no evidence that a premeditated murder was the natural and probable consequence of the crime of assault with a deadly weapon in the context of this case.  The California Court of Appeal rejected both arguments.

In rejecting the first point, the court held:

> Williams contends his "first degree murder verdict was premised on no evidence of premeditation and deliberation."  He asserts that "[n]o evidence was introduced that any plan was in play about what was to be done upon arrival at [Celestine's] residence, let alone discussed, except presumably a plan to learn where Ms. Jefferson's missing property was and who was responsible for its disappearance, and to retrieve her house keys." We disagree with this self-serving view of the facts adduced at trial.
> As previously discussed, there is substantial evidence Jefferson intended to kill Celestine and that she premeditated and deliberated the murder. (*Ante,* at p. 18.)  As we shall explain, there is substantial evidence Williams, like Miller, knew of and shared Jefferson's murderous intent, and thus, was guilty as an aider and abettor for Celestine's murder.

---

[23] *See Illinois v. Vitale,* 447 U.S. 410, 416 (1980); *Newton v. Superior Court of California*, 803 F.2d 1051, 1058 (9th Cir. 1986).

[24] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

8

Williams and Jefferson were upset over what had transpired at Jefferson's home in her absence. Williams went to Celestine's home armed with a gun, along with Jefferson and Miller, who were armed with knives. As Jefferson and Miller stabbed and cut Celestine, Williams stood by the door, prevented Charolett from leaving and seeking assistance, threatened to shoot Celestine when Charolett moved toward him, and repeatedly stated, "I'm going to shoot him. Let me just kill him. Let's just get it over with. Let me just kill him." When Jefferson and Miller were finished stabbing Celestine and defendants were about to leave, Charolett asked if she could call an ambulance. Williams said, "No. Let that motherfucker die." Williams' conduct and statements before, during, and after the attack provide overwhelming evidence he shared Jefferson's murderous intent and aided and facilitated Celestine's murder.[25]

With respect to the natural and probable consequences argument, the California Court of Appeal held:

> Miller contends the jury instructions erroneously permitted him to be found guilty of murder without malice. He argues that "[w]hen the intended crime is assault with a deadly weapon, and the unintended crime is murder, the natural and probable consequences doctrine does not apply unless the accomplice has malice aforethought. . . ." "Because the jury was permitted to convict [*him* ] of second degree murder under the natural and probable consequences doctrine *without* a finding of [*his* ] malice aforethought," he contends his conviction must be reversed. Miller fails to recognize the nature of the natural and probable consequences doctrine.
> Under the natural and probable consequences doctrine, "'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.'" [Citation omitted.] The natural and probable consequences doctrine "allows an aider and abettor to be convicted of murder, *without malice* . . . ." [Citation omitted. Italics in the original] As our Supreme Court recently observed: "[W]e have previously rejected the argument, advanced by defendant here, that the natural and probable consequences doctrine unconstitutionally presumes malice on the part of the aider and abettor." [Citations omitted] "The [California] Supreme Court has repeatedly rejected the contention that an instruction on the natural and probable consequences doctrine is erroneous because it permits an aider and abettor to be found guilty of murder without malice."].) Accordingly, Miller's argument that the jury instructions concerning the natural and probable consequence doctrine

---

[25] *Miller*, 2010 WL 827904 at *9.

erroneously permitted him to be found guilty of murder without a finding a malice fails.[26]

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[27]  This Court must, therefore, determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[28]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[29]

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[30]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its

---

[26] *Miller*, 2010 WL 827904 at *9 (footnote omitted).  Although Miller, not Williams, advanced this argument, each of the defendants joined in the arguments of the other defendants to the extent it may have benefitted them.  *Id.* at *1 n.9.

[27] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[28] *Jackson*, 443 U.S. at 318-19.

[29] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[30] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

inquiry by reference to the elements of the crime as set forth in state law.[31]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[32]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[33]  A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[34]  This is especially true where, as in this case, the highest court in the state has denied review of the lower court's decision.[35]

In this case, the California Court of Appeal determined that there was sufficient evidence to support the determination that Williams shared Jefferson's murderous intent and aided and abetted the murder.  The appellate court also found that the jury was properly instructed on the natural and probable consequences doctrine, and that the evidence supported that instruction.  Although it might have been possible to draw a different inference from the evidence, this Court

---

[31] *Jackson*, 443 U.S. at 324 n. 16.

[32] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[33] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[34] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[35] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

is required to resolve that conflict in favor of the prosecution.[36]  Williams bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous;[37] a burden Williams has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found that he harbored the requisite *mens rea* as defined under California law, especially considering the double deference owed under *Jackson* and AEDPA.  Nor does the record compel the conclusion that no rational trier of fact could not have found that the murder was the natural and probable consequence of Williams' aiding and abetting.[38]  Williams is not entitled to relief under his second ground.

Ground 3:  Jury Coercion

Williams contends that trial court coerced the jury into finding him guilty of first-degree murder.  The California Court of Appeal succinctly recited the facts and Williams' argument in its decision, and rejected his argument.

> Williams contends the trial court effectively coerced a verdict on count I (murder) by instructing the jury to "[c]ontinue [deliberating] till you all drop" thereby violating his right to due process of law.  While the trial court used some poorly chosen language, we conclude that its instruction did not impermissibly coerce the verdict.
> At 11:40 a.m. on August 8, 2007, the fifth day of deliberations, the jury sent the trial court the following question: "We have found a defendant guilty of murder.

---

[36] *See Jackson*, 443 U.S. at 326.

[37] 28 U.S.C. § 2254(e)(1).

[38] Although Williams couches his claim before this Court as being one of sufficiency of the evidence, and the California Court of Appeal was presented with a challenge to the jury instruction, the finding that the jury was properly instructed on the "natural and probable consequences" theory necessarily encompasses a finding that the evidence supported the giving of the instruction.  *See People v. Sakarias*, 995 P.2d 152, 171 (Cal. 2000) (holding that the duty to instruct on "natural and probable consequences" only arises when the trial court has determined that the evidence will support instruction on the theory); *People v. Prettyman*, 926 P.2d 1013, 1025 (Cal. 1996) (same).

We are split 8-4 between 1st & 2nd degree with no movement—What are our options?" The trial court apparently provided the jury with the following written response: "Continue trying till you all drop." [Footnote omitted.] Thereafter, the jury continued deliberating and recessed for the evening at 4:00 p.m. At 10:35 a.m. the next morning, the jury notified the court that it had reached a verdict.

Because the verdict finding Miller guilty of second degree murder was signed on August 2, 2007, and the verdicts finding Jefferson and Williams guilty of first degree murder were signed on August 8 and 9, 2007, respectively, Williams argues "the jury was hung on the degree of murder for Mr. Williams or Ms. Jefferson, or both."

Pursuant to section 1140: "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree." "'The determination whether there is reasonable probability of agreement rests in the discretion of the trial court. [Citations.] The court must exercise its power, however, without coercion of the jury, so as to avoid displacing the jury's independent judgment "in favor of considerations of compromise and expediency." [Citation.]' [Citation.] The question of coercion is necessarily dependent on the facts and circumstances of each case." (*People v. Sandoval* (1992) 4 Cal.4th 155, 195-196.)

In *People v. Gainer* (1977) 19 Cal.3d 835, 852, our Supreme Court held that "it is error for a trial court to give an instruction which either (1) encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them; or (2) states or implies that if the jury fails to agree the case will necessarily be retried." (Fn.omitted.) "Such a displacement may be the result of statements by the court constituting undue pressure upon the jury to reach *a* verdict, whatever its nature, rather than no verdict at all." (*People v. Carter* (1968) 68 Cal.2d 810, 817.)

Nothing in the court's instruction can be construed as creating the impression the court favored a particular outcome. Moreover, when considered in context, it is plain that the court's instruction did not place undue pressure on the jury to reach a verdict to avoid a hung jury. After receiving the court's response, the jury recessed for the evening at 4:00 p.m. without reaching a verdict. Thus, the jury did not construe the instruction literally, i.e. that it was to continue deliberating until it reached a verdict or dropped. Furthermore, the court did not state or imply that if the jury failed to agree the case would necessarily be retried. In light of the lengthy trial, the number of witnesses, and relatively short period of deliberations given the number of defendants and issues to be decided at the time of the impasse, the trial court's direction to continue deliberations could only have been perceived by the jury as giving them an opportunity to enhance their understanding of the case, rather than as pressure to reach a verdict. (*People v. Pride* (1992) 3 Cal.4th 195, 265.) The jury availed itself of this opportunity by requesting the reading of testimony from one of the witnesses.

For the reasons stated above, the trial court did not coerce the verdict.[39]

Justice Alito, in dissenting from the denial of certiorari in *Wong*, noted that clearly established constitutional law on the question of what judicial comments constitute "coercive jury instructions" is sparse.[40] Justice Alito also noted that only one decision of the Supreme Court, *Lowenfield*,[41] addressed the constitutional rule against coercive jury instructions.[42] In *Lowenfield* the Supreme Court held that the "contention that the jury was improperly coerced requires that [the court] consider the . . . charge given by the trial court in its context and under all the circumstances."[43] A general standard as wide as provided in *Lowenfield* gives state courts wide latitude for reasonable decision making under AEDPA.[44]

In *Packer*,[45] as here, the California Court of Appeal in rejecting Williams' claim applied *Gainer*. The district court denied Packer's petition under § 2254. The Ninth Circuit reversed in part on the basis that the Court of Appeal had failed to apply the totality of the circumstances test as required by *Lowenfield* and in part faulting the state court for stating that "there is nothing improper in urging the jury to consider [the matter] further with the view to reaching an agreement as long as the language used does not coerce a particular type of verdict," which it

---

[39] *Miller*, 2010 WL 827904 at *15-16.

[40] *Wong v. Smith*, 131 S. Ct. 10, 11 (2010) (Alito, J., dissenting from the denial of certiorari).

[41] *Lowenfield v. Phelps*, 484 U.S. 231 (1988).

[42] *Wong*, 131 S. Ct. at 11.

[43] 484 U.S. at 237 (internal quotation marks and citations omitted).

[44] *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway the courts have in reaching outcomes on a case by case basis.").

[45] *Early v. Packer*, 537 U.S. 3 (2002).

determined was contrary existing Supreme Court precedent, citing *Jenkins*[46] and *United States Gypsum Co.*[42] In reversing, the Supreme Court held that *Jenkins* and *Gypsum Co.* were decided under the Supreme Court's supervisory power, not a constitutional provision.[43] The Supreme Court further held that to satisfy *Lowenfield*, all that is required is that the import of the state appellate court decision find that the trial court's actions and inactions were noncoercive either individually or cumulatively.[44] The California Court of Appeal did just that.

This Court agrees with the California Court of Appeal that the trial judge in this case used a poor choice of words. A poor choice of words is not, however, the constitutional standard. No decision of the Supreme Court has held that a poor choice of words rises to the level of "coercion." In light of *Lowenfield* and *Packer,* and applying *Yarborough*, this Court cannot find that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[45] In particular, this Court cannot find that the state court's decision was objectively unreasonable as required by *Landrigan-Wiggins*. Williams is not entitled to relief under his third ground.

---

[46] *Jenkins v. United States*, 380 U.S. 445 (1965) (per curiam).

[42] *United States v. United States Gypsum Co.*, 438 U.S. 42 (1978).

[43] *Packer*, 537 U.S. at 10.

[44] *Id.* at 9.

[45] 28 U.S.C. § 2254(d).

V.  CONCLUSION AND ORDER

Williams is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[46]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[47]

The Clerk of the Court is to enter judgment accordingly.

Dated: August 16, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[46] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[47] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.